### PETER PIERCE *vs.* ARTEMAS LEE & others, Executors.

Land was devised for life, and then directed to be sold and the net proceeds equally divided among the testator's children and their heirs: During the continuance of the life estate one of the children became insolvent, and his property was assigned under *St.* 1838, *c.* 163. *Held*, that his own share passed to his assignees; as well as his right in the share of another child deceased since the testator, if such other child died before the assignment, but not otherwise.

ACTION OF CONTRACT to recover two thirds of the proceeds of the sale, by the defendants as executors, of a farm of the plaintiff's father, who died in 1837, and by his will gave the use and improvement of said farm to his parents for life, and added this provision : " At the decease of my father and mother, meaning the last survivor, the aforesaid farm shall be sold for the most it will bring, and the net proceeds thereof equally divided among my children and their heirs." The testator's parents survived him, his father, who was the last survivor, dying in 1850. The testator left three children, the plaintiff, Lucy and Sophia, the last of whom died before her grandfather

unmarried and without issue. After the probate of the will, and before the death of the testator's father, the plaintiff became insolvent, his estate was duly assigned to assignees, and he obtained his certificate of discharge in insolvency. Said assignees, before the commencement of this action, executed a conveyance to a third person, purporting to convey all the plaintiff's right against the defendants for the proceeds of said sale. This action was brought by the plaintiff for his own benefit, without the consent of his assignees or of those claiming under them, and was submitted to the decision of the court upon the facts above stated.

*P. C. Bacon*, for the plaintiff, cited *St.* 1838, *c.* 163, § 5; *Emerson* v. *Cutler*, 14 Pick. 108; *Higden* v. *Williamson*, 3 P. W. 132; Leigh & Dalzell on Conversion, *c.* 6; *Morley* v. *Bird*, 3 Ves. 628; *Stuart* v. *Bruce*, 3 Ves. 632; *Holloway* v. *Holloway*, 5 Ves. 399; 2 Jarman on Wills, 22; Com. Dig. Bankrupt, D. 9.

*G. F. Hoar*, (*C. Devens, Jr.* with him,) for the defendants, cited *St.* 1838, *c.* 163, § 5; *Winslow* v. *Goodwin*, 7 Met. 363; *Gardner* v. *Hooper*, 3 Gray, 398; *Higden* v. *Williamson*, 3 P. W. 132; *Holland* v. *Cruft*, 3 Gray, 179, 180, & cases cited; *Grieveson* v. *Kirsopp*, 2 Keen, 653; Leigh & Dalzell on Converrsion, 136, & cases cited; *Fletcher* v. *Ashburner*, 1 Bro. C. C. 497; *Reed* v. *Underhill*, 12 Barb. 113; *Smith* v. *Kearney*, 2 Barb. Ch. 533; *Smith* v. *Starr*, 3 Whart. 62; *Hankins's Estate*, 4 W. & S. 300; *McGinnis* v. *Foster*, 4 Georgia, 377; *Field* v. *Hallowell*, 12 B. Mon. 517.

SHAW, C. J. The court are all of opinion that, by force of the testator's will, the estate vested in the father and mother for their lives respectively. But there being no devise over, the reversion in fee, by right of inheritance, passed by law to the heirs at law of the testator, who were his three children. Nor was this result prevented or affected by the power to sell, given to the executors. This power was accompanied by no express gift of the estate to the executors as trustees; nor was such legal interest in them necessary to the execution of their power, so as to pass by implication. A power of sale, accompanied by no gift of the legal estate, express or implied, is a naked power

which has no operation till executed; and then it operates by relation to defeat the estate of the heir or devisee. Indeed, in the present case, it was of very little importance to any real rights of parties, whether the power should be ever executed or not; because, when executed, the proceeds were to go to the same heirs and in the same proportions as those in which they took the reversion by inheritance. It was provided as a convenient mode of distributing the estate in money, instead of letting it pass as real estate, in case it should be thought advisable.

Before the death of the testator's father, and whilst the real estate was held by him as tenant for life, the plaintiff went into insolvency. The question is, whether, by the law of insolvency, the plaintiff's third in the real estate passed by the assignment to the assignees? The court are of opinion that it did. It was a valuable interest in real estate, defeasible only by a sale, which, if made, would substitute the proceeds for the real estate. The object of the insolvent law is to make the whole of the existing property of the debtor available to the payment of his debts, and is not confined to technically vested estates. The test given by the original insolvent law, *St.* 1838, *c.* 163, § 5, is this: "which assignment shall vest all the property of the debtor, both real and personal, which he could by any way or means have lawfully sold, assigned or conveyed, or which might have been taken in execution, at the time of the first publication." We think the case is clearly within the principles laid down in *Gardner* v. *Hooper*, 3 Gray, 398. We are of opinion therefore that the insolvent's own third passed by the assignment to his assignees.

But a different rule may apply to the one half of one third, taken by the insolvent as heir of his sister Sophia, who died without issue and unmarried. His title to that did not accrue until her decease; and it does not appear whether her decease preceded or followed the insolvency of the plaintiff. If on inquiry it shall appear that it followed that event, then it is a new acquisition to the plaintiff after his insolvency, and he has a right to receive it and hold it to his own use. If she died previously to his insolvency, then the entire half goes to the assignees.

*Judgment accordingly.*